UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>$2,340,000.00 ASSOCIATED WITH )<br>PETROLEUM TANKER NAUTIC, WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9150377, )<br>HELD BY LIBERIAN COMPANY 1 )<br>)<br>- AND - )<br>)<br>$9,998,941.91 ASSOCIATED WITH )<br>PETROLEUM TANKER NAUTIC, WITH )<br>INTERNATIONAL MARITIME )<br>ORGANIZATION NUMBER 9150377, )<br>HELD AT U.S. BANK 1 )<br>)<br>)<br>Defendants. ) | Civil Action No. 20-1139 |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff the United States of America (the "United States"), by and through the United States Attorney for the District of Columbia, which brings this verified complaint for forfeiture in a civil action *in rem* against the defendant properties, namely: $2,340,000.00 associated with petroleum tanker Nautic (a/k/a Gulf Sky) ("Nautic"), with International Maritime Organization ("IMO") number 9150377, held by Liberian Company 1 ("Defendant Funds 1"); and $9,998,941.91 associated with petroleum tanker Nautic, with IMO number 9150377, held at U.S. Bank 1 ("Defendant Funds 2") (collectively, the "Defendant Properties"); and alleges as follows.

**NATURE OF ACTION AND THE DEFENDANT IN REM**

1. This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI"). Specifically, the United States is investigating the unlawful use of the U.S. financial system to support and finance Iran's transport and sale of oil products to benefit sanctioned Iranian entities.

2. The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 *et seq*, and the bank fraud statute, codified at 18 U.S.C. § 1344. The Defendant Properties are also subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions, in violation of 18 U.S.C. § 1956, and as property traceable to such property. The Defendant Properties are further subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1), as foreign assets or sources of influence of the Islamic Revolutionary Guard Corps ("IRGC"), a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5).

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of Columbia.

**FACTS GIVING RISE TO FORFEITURE**

I. **BACKGROUND**

  A. **IEEPA and the Iranian Transactions and Sanctions Regulations**

5. This civil forfeiture action relates to violations of regulations and Executive Orders issued pursuant to IEEPA. Enacted in 1977, IEEPA gives the President certain powers, defined in

50 U.S.C. § 1702, to deal with any threats with respect to which the President has declared a national emergency, and prescribes criminal penalties for violations. Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title." 50 U.S.C. § 1705(a).

6. Beginning with Executive Order No. 12,170, issued on November 14, 1979, the President found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

7. On March 15 and May 6, 1995, the President issued Executive Orders Nos. 12,957 and 12,959, prohibiting, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person, and on August 19, 1997, issued Executive Order No. 13,059 clarifying the previous orders (collectively, the "Executive Orders"). The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations (renamed in 2012, the Iranian Transactions and Sanctions Regulations, the "ITSR") implementing the sanctions imposed by the Executive Orders.

8. The ITSR, Title 31, Code of Federal Regulations, Section 560.204, prohibits, among other things, the exportation, re-exportation, sale, or supply, directly or indirectly, from the United States, or by a United States Person, of goods, technology, or services to Iran or the Government of Iran (with certain limited exceptions), including the exportation, re-exportation, sale or supply of goods, technology or services to a third country knowing that such goods,

technology or services are intended for Iran or the Government of Iran, without a license from Department of Treasury Office of Foreign Assets Control ("OFAC"), which is located in Washington, D.C.

9. The ITSR also prohibits the supply of services where the benefit of such services is otherwise received in Iran, if such services are performed in the United States or provided outside the United States by a U.S. person. *See* 31 C.F.R. § 560.410.

10. The ITSR provides that the transfer of funds, directly or indirectly, from the United States or by a U.S. person to Iran or the Government of Iran is a prohibited export, re-export, sale, or supply of services to Iran or the Government of Iran. *See* 31 C.F.R. § 560.427(a).

11. The ITSR further prohibits transactions that evade or avoid, have the purpose of evading or avoiding, cause a violation of, or attempt to violate the ITSR. 31 C.F.R. § 560.203.

12. On October 25, 2007, the Department of the Treasury designated the IRGC-Qods Force ("IRGC-QF") pursuant to Executive Order No. 13224 for providing lethal support to multiple terrorist organizations.

13. According to the Department of the Treasury, the IRGC and its major holdings have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion dollar businesses and maintaining extensive economic interests in the oil industry and the profits from these activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction ("WMD") and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad.

14. On November 5, 2018, the Department of the Treasury designated the National Iranian Oil Company ("NIOC"). A previous press release noted that NIOC was owned by the Government of Iran through the Ministry of Petroleum, and was responsible for the exploration,

production, refining, and export of oil and petroleum products in Iran. It further noted the close relationship between the IRGC, which OFAC designated in 2007 because of its ties to Iran's ballistic missile program, and NIOC.

15. On November 5, 2018, the Department of the Treasury designated National Iranian Tanker Company ("NITC"). A previous press release noted that NITC was a Government of Iran entity which employed various front companies.

16. On April 8, 2019, the President designated the IRGC as a Foreign Terrorist Organization. The designation noted that the IRGC actively finances and promotes terrorism.

17. On January 23, 2020, the Department of the Treasury described NIOC as "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's [IRGC-QF] and its terrorist proxies."

### B. Overview of the Sale of Petroleum Tanker Nautic to Taif

18. This civil forfeiture action arises from a scheme to unlawfully access the U.S. financial system to support illicit shipments to and from Iran. The Iranian parties established front companies that transmitted U.S. dollar wires through the United States to purchase the Nautic. Shortly after these entities purchased the Nautic, they used the Nautic to transport Iranian crude oil from Kharg Island, Iran in coordination with NIOC.

19. The scheme involves multiple parties in Iran with a history of coordinating petroleum shipments with NIOC and NITC, and that are associated with the IRGC-QF.

20. Primarily, the scheme was orchestrated by:

    a. Iranian individual, Kamran Lajmiry a/k/a Kamran Lajmiri ("Lajmiri"), who was employed by an Iranian shipping company ("Iranian Company 1"). Lajmiri

coordinated the sale of the Nautic from a Liberian company ("Liberian Company 1") to Taif Mining Services LLC ("Taif").

      b.      Iranian individual, Amir Dianat ("Dianat"), who was the managing director of one Iranian company and a regional director of another Iranian company ("Iranian Company 2"). Dianat uses both an Iranian and Iraqi passport with different names and dates of birth.

21.    Lajmiri and Dianat both have experience doing business with NIOC and NITC.

      a.      Lajmiri was employed for approximately seven years in the technical department of the NITC at Kharg Island, Iran. Lajmiri also previously used NIOC as a bunker supplier at Kharg Island.

      b.      Dianat previously coordinated with NIOC to load Iranian crude oil at Kharg Island.

22.    Lajmiri lamented that "buying even the smallest and most ordinary items, even simple industrial components, has become a major challenge for Iranian traders and traders because of [ ] US sanctions." Lajmiri further noted that it is "is almost impossible under these circumstances" to purchase tankers.

### C.    Taif was a Shell Company for Iranians Linked to NIOC, NITC, and the IRGC-QF

23.    In 2019, Dianat retained Lajmiri as a consultant to assist with purchasing, inspection, and oversight of vessels.

24.    In 2019, Dianat and Lajmiri agreed to purchase the Nautic from Liberian Company 1. Lajmiri retained an agent in Japan ("Japanese Agent") to assist in this purchase.

25.    Lajmiri initially planned to use Iranian Company 2 as the buyer of the Nautic. However, on or about April 30, 2019, Japanese Agent informed Lajmiri that the bank processing

the sale of the Nautic would need detailed background documentation on Iranian Company 2 and affiliated entities as part of "OFAC" and due diligence checks by the bank.

26. On or about that same time, Lajmiri and Dianat caused the registration of Taif.

27. Taif was nominally registered in the name of two Omani nationals, however, Dianat and another Iranian individual maintained the true majority ownership of Taif.

28. A confidential reliable source revealed that Dianat and Taif are associated with the IRGC-QF.

29. On or about May 29, 2019, Lajmiri inserted Taif as the new buyer of the Nautic, in lieu of Iranian Company 2. As part of this change in buyer, a United Kingdom broker to the transaction required that Taif produce a performance guarantee on Iranian Company 2 letterhead stating that Iranian Company 2 "unconditionally and irrevocably guarantee[s]" Taif's purchase of the Nautic from Liberian Company 1.

30. On June 10, 2019, a Taif nominee owner signed a memorandum of agreement for the purchase of the Nautic and warranted the buyers, "including, but not limited to, the Buyers, shareholders and/or affiliated companies," were not under any "sanctions, prohibition or blacklist whatsoever imposed by USA, UK, EU, UN."

31. Lajmiri subsequently described Taif as having "no experience, no background in such major projects" such as the purchase of a vessel.

32. Lajmiri further admitted that it was "very difficult" to get Liberian Company 1 to sell a huge ship to a company with no background. Lajmiri further stated that with help from Japanese Agent who had international credentials, Lajmiri was able to convince Liberian Company 1 to sell to Taif.

33. Lajmiri admitted that he had to circumvent sanctions in order to purchase the Nautic.

34. On or about September 10, 2019, Taif wired Defendant Funds 1 through a brokerage firm in the United Kingdom ("UK Brokerage Firm") as a 20% deposit for the Nautic, which funds were then transferred to Liberian Company 1 and transited through the United States.

35. Between on or about October 8 and 16, 2019, Taif wired the balance of the purchase price to UK Brokerage Firm.

36. On or about October 23, 2019, Taif caused the UK Brokerage Firm to wire $9,983,931.91 (a portion of Defendant Funds 1) with the instruction of "Payment of Balance" to Liberian Company 1.

37. On or about October 24, 2019, Taif caused the UK Brokerage Firm wired the remaining $15,010.00 (the remaining portion of Defendant Funds 1) with a note of "Additional Fee Due to Delay."

38. Shortly thereafter, Defendant Funds 2 were frozen while transiting through a correspondent account at U.S. Bank 1.

39. Liberian Company 1 transferred possession of petroleum tanker Nautic to Taif. Taif subsequently renamed the Nautic to the Gulf Sky.

40. Liberian Company 1 never received possession of Defendant Funds 2.

41. Taif failed to seek or obtain an OFAC license for the above transactions.

**D.    Nautic Received Iranian Crude Oil from NIOC After Purchased by Taif**

42. On December 2, 2019, after taking possession of the Nautic, Taif ordered the captain of the Nautic to take the vessel to Iran.

43. On December 2, 2019, Taif notified two Iranian Company 2 employees that Taif had sent the vessel to Iran.

44. On December 3, 2019, the captain of the Nautic notified Taif that a notice of readiness had been tendered to NIOC at Kharg Island, Iran for loading.

45. After receiving this document, Taif notified two Iranian Company 2 employees that the Nautic loaded Iranian crude oil onboard.

46. Subsequent to this voyage, the Nautic was seized pursuant to a U.A.E. civil court order.

## COUNT ONE – FORFEITURE
## (18 U.S.C. § 981(A)(1)(C))

47. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 46 above as if fully set forth herein.

48. Persons known and unknown acted individually and conspired together to cause and conduct the above identified illegal payments and financial services, which benefitted Iran, in violation of IEEPA, specifically 50 U.S.C. § 1705 *et seq*.

49. As such, the Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to substantive and conspiracy violations of section 206 (relating to penalties) of the IEEPA.

## COUNT TWO – FORFEITURE
## (18 U.S.C. § 981(A)(1)(C))

50. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 46 above as if fully set forth herein.

51. Persons known and unknown acted individually and conspired together to conduct the above identified illegal payments using shell companies and other tactics to conceal beneficial

owners and ties to Iran as part of a scheme or artifice to defraud a U.S. bank and/or to obtain any of the money, funds, or other property owned by, or under the custody or control of, a U.S. bank by means of false or fraudulent pretenses, representations, or promises, in violation of the bank fraud statute, specifically 18 U.S.C. § 1344, and the conspiracy statute, 18 U.S.C. § 1349.

52. As such, the Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a substantive violation and conspiracy to violate § 1344.

### COUNT THREE -- FORFEITURE
### (18 U.S.C. § 981(A)(1)(A))

53. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 46 above as if fully set forth herein.

54. Persons known and unknown acted individually and conspired together to transmit and transfer funds related to the Defendant Properties from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of the penalties of IEEPA and the bank fraud statute, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A).

55. As such, the Defendant Properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. § 1956(h), 1956(a)(2)(A), or as any property traceable to such property.

### COUNT FOUR -- FORFEITURE
### (18 U.S.C. § 981(A)(1)(G)(I))

56. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 46 above as if fully set forth herein.

57. The IRGC is a designated foreign terrorist organization.

58. The above described scheme involves the IRGC's unlawful access of the U.S. financial system to support illicit shipments to and from Iran. The Defendant Properties were associated with the IRGC, and are sources of influence for the IRGC.

59. As such, the Defendant Properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as assets of a foreign terrorist organization engaged in planning or perpetrating any federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and as assets affording any person a source of influence over any such entity or organization.

* * *

PRAYER FOR RELIEF

WHEREFORE, the United States prays that notice issue on the Defendant Properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Properties be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 1, 2020
Washington, D.C.

Respectfully submitted,

TIMOTHY J. SHEA, D.C. Bar Number 437437
UNITED STATES ATTORNEY

By:       /s/ *Zia Faruqui*
ZIA M. FARUQUI, D.C. Bar No. 494990
BRIAN P. HUDAK,
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7566 (main line)

*Attorneys for the United States of America*

**VERIFICATION**

I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 1st day of May, 2020.


_____*/s/  Cindy Burnham*_____ _
Special Agent Cindy Burnham
Federal Bureau of Investigation



I, Thomas Tamsi, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 1st day of May, 2020.


_____*/s/ Thomas Tamsi*_____ _
Special Agent Thomas Tamsi
Homeland Security Investigations

# CIVIL COVER SHEET
JS-44 (Rev. 5/12 DC)

## I. (a) PLAINTIFFS
United States of America
c/o U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

## DEFENDANTS
$2,340,000.00 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9150377, HELD BY LIBERIAN COMPANY 1 - and - $9,998,941.91 ASSOCIATED WITH

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Zia M. Faruqui (202) 252-7117
Assistant United States Attorney
555 4th Street, N.W., 11-848
Washington, DC 20530

## ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (x) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in This State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

**A. Antitrust**
- [ ] 410 Antitrust

**B. Personal Injury/Malpractice**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

**C. Administrative Agency Review**
- [ ] 151 Medicare Act

Social Security
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**(x) E. General Civil (Other)** OR **( ) F. Pro Se General Civil**

Real Property
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

Personal Property
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

Bankruptcy
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

Prisoner Petitions
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

Property Rights
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

Federal Tax Suits
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [x] 690 Other

Other Statutes
- [ ] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization

- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Remand from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 981(a)(1)(A) and 1956 (money laundering)

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☒   NO ☐ | If yes, please complete related case form |
| DATE: 05/01/2020 | SIGNATURE OF ATTORNEY OF RECORD  /s/ Zia M. Faruqui | | |

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

   I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

   III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

   VI.  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br><br>Plaintiff,  <br><br>v.  <br><br>$2,340,000.00 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9150377, HELD BY LIBERIAN COMPANY 1  <br><br>- and -  <br><br>$9,998,941.91 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9150377, HELD AT U.S. BANK 1  <br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No. 20-1139 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

WARRANT FOR ARREST *IN REM*

TO:   THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER UNITED STATES OFFICER OR EMPLOYEE:

WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United States District Court for the District of Columbia, on the 1st day of May, 2020, alleging that the defendant properties are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 981(a)(1)(G);

YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant properties, thus bringing within the jurisdiction of the Court the said defendant properties, more fully described as:

1

**$2,340,000.00 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9150377, HELD BY LIBERIAN COMPANY 1**

**- and -**

**$9,998,941.91 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9150377, HELD AT U.S. BANK 1**

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed, unless, pursuant to Rule G(3)(c)(ii)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the defendant properties are in the government's possession, custody, or control.

Dated: May 1, 2020

_____
Clerk of the Court

By: _____
Deputy Clerk