# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>  v.<br><br>$2,240,000.00 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER, 9150377, HELD BY LIBERIAN COMPANY 1<br><br>    - AND -<br><br>$9,998,941.91 ASSOCIATED WITH PETROLEUM TANKER NAUTIC, WITH INTERNATIONAL MARITIME ORGANIZATION 9150377, HELD AT U.S. BANK 1<br><br>              Defendants. | Civil Action No. 20-1139 (JEB) |
| *UNDERLYING CASES:*<br><br>JAMES OWENS, et al.,<br>              Plaintiffs,<br>  v.<br>REPUBLIC OF SUDAN, et al.,<br>              Defendants. | Civil Action No. 01-2244 (JDB) |
| JUDITH ABASI MWILA, et al.,<br>              Plaintiffs,<br>  v.<br>ISLAMIC REPUBLIC OF IRAN, et al.,<br>              Defendants. | Civil Action No 08-1377 (JDB) |

| |  |
|---|---|
| RIZWAN KHALIQ, et al.,<br><br>            Plaintiffs,<br><br>   v.<br><br>REPUBLIC OF SUDAN, et al.,<br><br>            Defendants. | Civil Action No. 10-356 (JDB) |

**VERIFIED CLAIM AND STATEMENT OF INTEREST
OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE *IN REM***

Plaintiffs in the underlying civil actions numbered 01-2244, 08-1377, and 10-356 (collectively, the "Victim Plaintiffs") are judgment creditors of the Islamic Republic of Iran ("Iran"), and hereby provide notice of their intent to assert their senior lien interest in approximately $10 million in blocked funds that the United States seeks to forfeit in this action. *See* United States' Verified Forfeiture Complaint for Forfeiture *In Rem* ("Compl."), *United States v. $2,340,000.00*, No. 1:20-cv-1139 (D.D.C. May 1, 2020), Dkt. 1. In support of this Notice, the Victim Plaintiffs state as follows:

**I.    Iran Owes The Victim Plaintiffs Nearly $1 Billion In Compensation**

1.    The Victim Plaintiffs are victims and surviving family members of the 1998 terrorist bombings of the U.S. Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania (the "Embassy Bombings"). Pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, James Owens, Rizwan Khaliq, and Judith Mwila brought suit on behalf of themselves and others against Defendants Iran and the Republic of Sudan ("Sudan") in three separate actions in the United States District Court for the District of Columbia, seeking damages for the injuries they and their family members suffered during the Embassy Bombings. *See generally Owens v. Republic of Sudan*, No. 1:01-cv-2244 (D.D.C. Oct. 26, 2001) ("*Owens* Dkt."); *Mwila v. The*

2

*Islamic Republic of Iran*, No. 1:08-cv-1377 (D.D.C. Aug. 7, 2008) ("*Mwila* Dkt."); *Khaliq v. Republic of Sudan*, No. 1:10-cv-356 (D.D.C. Mar. 5, 2010) ("*Khaliq* Dkt."). Only Iran is implicated in the instant proceeding.

2. Upon hearing extensive evidence, the D.C. District Court (Bates, J.) determined that al Qaeda was able to carry out the horrific and deadly Embassy Bombings because Iran and Sudan deliberately provided material support to the terror group. *See Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 149-51 (D.D.C. 2011). The D.C. District Court ultimately awarded the Victim Plaintiffs judgments against Sudan and Iran totaling nearly $1 billion. Specifically, the court awarded $487,687,665.78 to the *Owens* Plaintiffs, *see Owens* Dkt. 303; $49,761,544.86 to the *Khaliq* Plaintiffs, *see Khaliq* Dkt. 42; and $419,752,640.49 to the *Mwila* Plaintiffs, *see Mwila* Dkt. 91 (collectively, "the Judgments").

3. The Victim Plaintiffs served the Judgments on Iran through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) in 2014 and 2015. *See Owens* Dkt. 354, at 1, 14; *Owens* Dkt. 380, at 1; *see also Owens* Dkt. 388, at 10 ("plaintiffs have provided notice of their default judgments to the foreign states"); *Mwila* Dkt. 142, at 2-3 (finding service on Iran to be adequate). Though properly served, Iran has never appeared in the underlying actions.

4. Iran is jointly and severally liable for the entire amount of the Judgments, but it has not paid one cent to satisfy them. Nor has Sudan. The Victim Plaintiffs thus hold unsatisfied judgments that (together with post-judgment interest) total more than $1 billion and are enforceable entirely against Iran.

5. To enforce their Judgments, the Victim Plaintiffs moved for orders under 28 U.S.C. § 1610(c), having demonstrated that Iran had been properly served and a reasonable period of time had elapsed so that judgment enforcement proceedings could commence. The D.C. District Court

granted the *Owens* Plaintiffs' and *Khaliq* Plaintiffs' motions on October 28, 2015, and the *Mwila* Plaintiffs' motion on April 5, 2016, ordering that Plaintiffs "are entitled to enforce their judgment against defendants in any manner consistent with 28 U.S.C. § 1610 and any other applicable provisions of law." *Owens* Dkt. 388, at 1; *Mwila* Dkt. 142, at 4; *Khaliq* Dkt. 87, at 1.

## II. The Government Initiates The Instant Civil Forfeiture Action Against Iranian Assets In This District

6. On May 1, 2020, the government initiated the instant civil forfeiture action against the following properties: (1) $2,340,000.00 associated with petroleum tanker Nautic (a/k/a Gulf Sky) ("Nautic"), with International Maritime Organization ("IMO") number 9150377, held by Liberian Company 1 ("Defendant Funds 1"); and $9,998,941.91 associated with petroleum tanker Nautic, with IMO number 9150377, held at U.S. Bank 1 ("Defendant Funds 2"), (collectively, the "Defendant Properties"). *See* Compl. at 1.

7. The Defendant Properties arose when an associate of Iran's Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF")—the IRGC's foreign policy branch that provides "lethal support to multiple terrorist organizations," Compl. ¶¶ 12, 28—set up a front company, Taif Mining Services, LLC ("Taif"), in order to purchase a shipping vessel, named the Nautic, to transport Iranian oil without triggering U.S. sanctions controls, *id.* ¶¶ 18, 23-33. After Taif contracted to purchase the Nautic from a Liberian maritime company, Taif successfully routed its first payment for the ship—a $2.3 million security deposit, or Defendant Funds 1—through the United States. *Id.* ¶¶ 29-30, 34. Soon after, Taif transmitted the remaining balance—approximately $10 million, or Defendant Funds 2—but these funds were detected as violating U.S. sanctions and immediately blocked at U.S. Bank 1. *Id.* ¶¶ 36-38. Unaware the funds were blocked, the Liberian maritime company tendered the Nautic to Taif, which immediately ordered the vessel to travel to Iran to be loaded with oil from the National Iranian Oil Company. *Id.* ¶¶ 39, 42-45.

8. As a result of this scheme, the government asserts, the Defendant Properties are subject to seizure and forfeiture by the United States (1) as property constituting or derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA") and the bank fraud statute, pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1344, respectively; (2) as property involved in money laundering transactions and as property traceable to such property, pursuant to 18 U.S.C. § 981(a)(1)(A); and (3) as foreign assets or sources of influence of the IRGC, as a designated foreign terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism, pursuant to 18 U.S.C. § 981(a)(1)(G)(i). *See* Compl. ¶ 2.

9. On May 1, 2020, this Court issued an arrest warrant *in rem* for Defendant Properties pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(a)(1)(A), and 981(a)(1)(G). *See* Warrant For Arrest *In Rem*, Dkt. 3.

### III. The Victim Plaintiffs Possess Standing To File A Verified Claim

10. A claimant must demonstrate a "colorable interest" in the funds at issue to demonstrate standing to file a verified claim in a civil forfeiture action. *United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars* ("*ING*"), 85 F. Supp. 3d 111, 116 (D.D.C. 2015). Perfecting a lien qualifies as a colorable interest. *Id.*

11. To perfect a lien under D.C. law, a court must issue a writ of attachment on the funds, and a judgment creditor must move for entry of judgment against the garnishee in possession of those funds. *See Consumers United Ins. Co. v. Smith*, 644 A.2d 1328, 1351 (D.C. 1994) (citing D.C. Code § 16-542); *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 203 (D.D.C. 2011) (citing D.C. Code § 16-556).

12. The Victim Plaintiffs have perfected a lien on Defendant Funds 2 and thus satisfy the standing requirement to file a verified claim.

13. On May 2, 2020, the *Wall Street Journal* reported that U.S. Bank 1—the bank that blocked Defendant Funds 2—is Wells Fargo Bank, N.A. ("Wells Fargo"). *See* Mengqi Sun & Dylan Tokar, *U.S. Charges Two Iranians Over Oil Tanker Purchase, Seeking $12 Million Forfeiture*, Wall St. J (May 2, 2020), https://www.wsj.com/articles/u-s-charges-two-iranians-over-oil-tanker-purchase-seeking-12-million-forfeiture-11588380410.

14. Based on this disclosure, the government's complaint in this action, and a government affidavit lodged in a related criminal action, the Victim Plaintiffs moved the D.C. District Court for an order authorizing the issuance of writs of attachment on Wells Fargo on May 22, 2020, *see Owens* Dkt. 450; *Mwila* Dkt. 159, *Khaliq* Dkt. 110, on the grounds that the Defendant Funds 2 are attachable by the Victim Plaintiffs under the FSIA and the Terrorism Risk Insurance Act ("TRIA"). *See generally Owens* Dkt. 450-2. Under the FSIA, the Victim Plaintiffs argued that Defendant Funds 2 are attachable because the funds are property of the Iranian state used for commercial activity in the United States. *Id.* at 11-16. In addition, the Defendant Funds 2 are attachable by the Victim Plaintiffs under TRIA because they are blocked assets that belong to a foreign state sponsor of terrorism. *Id.* at 17-18.

15. On May 25, 2020, the D.C. District Court granted the Victim Plaintiffs' motion and ordered the Clerk of Court to issue writs of attachment on Wells Fargo. *See Owens* Dkt. 451; *Mwila* Dkt. 160; *Khaliq* Dkt. 111. The court held that Defendant Funds 2 are attachable under the FSIA and that they "were used for commercial activity in the United States because the funds were transmitted through the United States to purchase a petroleum tanker." *Owens* Dkt. 451, at 2. The court also found that Defendant Funds 2 are attachable under TRIA because Taif is "at [a]

6

minimum, an agency or instrumentality of a terrorist party," and Defendant Funds 2 are "'blocked assets' because they were seized by the United States under the IEEPA." *Id.* The Clerk subsequently issued the writs of attachment on May 26, 2020.

16. The Victim Plaintiffs served the clerk-issued writs of attachment on Wells Fargo on May 27, 2020, and Wells Fargo accepted service that day.

17. Wells Fargo answered the writs of attachment on June 24, 2020, *see Owens* Dkt. 458; *Mwila* Dkt. 163; *Khaliq* Dkt. 115.

18. And on June 29, 2020, the Victim Plaintiffs moved for an entry of judgment against Wells Fargo as garnishee of the Defendant Funds 2. *See Owens* Dkt. 460; *Mwila* Dkt. 165; *Khaliq* Dkt. 117. That motion remains pending.

**IV.  Under TRIA, the Victim Plaintiffs Possess An Interest Senior To The Government**

19. Under TRIA, the Victim Plaintiffs are entitled to attach Defendant Funds 2 notwithstanding the instant civil forfeiture action.

20. Section 201 of TRIA provides that "[n]otwithstanding any other provision of law. . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA, Pub. L. No. 107-297, § 201(a) (2002) (codified at 28 U.S.C. § 1610). TRIA defines "blocked assets" to mean "any asset seized or frozen by the United States." *Id.*

21. TRIA's "notwithstanding any other provision of law" clause means that TRIA "supersedes all previous laws." *Hill v. Republic of Iraq*, No. 1:99-cv-3346, 2003 WL 21057173,

at *2 (D.D.C. Mar. 11, 2003) (quotation marks omitted); *see also Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 23 (D.C. Cir. 2010) ("TRIA's provisions apply [ ] to property possessed by the United States."); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 892 F. Supp. 2d 1038, 1051 (N.D. Ill. 2012) ("[P]rovisions of [] TRIA prevent any application of the forfeiture statute's time limits or relation-back provision."); 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin) ("[T]he executive branch has no statutory authority to defeat . . . enforcement" under TRIA.).  Therefore, if the Victim Plaintiffs satisfy the requirements of TRIA (which, as explained below, they do), the Victim Plaintiffs' lien on Defendant Funds 2 is senior to any interest claimed by the government.

22.     TRIA requires a court to determine "(1) whether the plaintiff has obtained a judgment against a terrorist party based on an act of terrorism, (2) whether the relevant assets are 'blocked' under [] TRIA, and (3) whether the owner of the assets is a terrorist party subject to the judgment or an agency or instrumentality of that party." *Stansell v. Revolutionary Armed Forces of Columbia*, No. 1:10-mc-471, 2019 WL 4040680, at *2 (D.D.C. Aug. 26, 2019).

23.     The D.C. District Court has already found that all three requirements of TRIA have been met by the Victim Plaintiffs, and that Defendant Funds 2 are thus attachable under TRIA. The Victim Plaintiffs obtained their Judgments against Iran, a terrorist party, based on an act of terrorism.  *See supra* ¶ 3.  Defendant Funds 2 are blocked assets under IEEPA.  *See supra* ¶¶ 8, 13, 15.  And finally, the owner of Defendant Funds 2 is the government of Iran through its front company, Taif, which is, at a minimum, an agency or instrumentality of the Iranian state.  *See supra* ¶¶ 7, 15.

\*        \*        \*

24. Pursuant to 28 U.S.C. § 981(f) and Rule G, the Victim Plaintiffs hereby assert a claim to the Defendant Funds 2 that is senior to the government's claim. Notwithstanding the Government's forfeiture efforts, the Victim Plaintiffs reserve all rights and remedies available in law and equity to enforce their lien against, and interest in, Defendant Properties.

Dated: June 30, 2020

Respectfully submitted,

/s/ *Matthew D. McGill*
Matthew D. McGill (No. 481430)
Chantale Fiebig (No. 487671)
Suria M. Bahadue (*admission pending*)
Crystal L. Weeks (No. 1617317)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.530.9522
mmcgill@gibsondunn.com
cfiebig@gibsondunn.com
sbahadue@gibsondunn.com
cweeks@gibsondunn.com

Thomas Fortune Fay
Caragh Fay
FAY LAW GROUP, P.A.
777 6th Street, N.W., Suite 410
Washington, D.C. 20001
(202) 589-1300

*Attorneys for Plaintiffs*

Jane Carol Norman
BOND & NORMAN LAW, P.C.
777 6th Street, N.W., Suite 410
Washington, D.C. 20001
(202) 682-4100

*Co-counsel for Plaintiffs Khaliq, et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this June 30, 2020, I electronically filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Columbia on all parties registered for CM/ECF in the above-captioned matter. No service is required on Defendant Iran, which is in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2).


Dated: June 30, 2020                        /s/ *Matthew D. McGill*
                                                               Matthew D. McGill